UNITED STATES v. J. B. THOMAS & CO.

(Circuit Court, D. Massachusetts. May 5, 1910.)

No. 141 (1,826).

1. CUSTOMS DUTIES (§ 85*)—WEIGHT OF WOOL ON SKIN—BURDEN OF PROOF.

In attacking the estimate of customs officers as to the quantity of wool on imported sheepskins, it is not enough to show a different weight to have been found by others. It must appear by direct and positive evidence that the method adopted by such officers was incorrect; and, in the absence of evidence to the contrary, it will not be assumed that a test of 8 out of 20,000 skins was inadequate, especially where there is evidence that such test was in accordance with the usual mode.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 85.*]

2. CUSTOMS DUTIES (§ 85*)—EVIDENCE—"REASONABLE NUMBER."

The question of what is a "reasonable number" of skins to test in ascertaining the quantity of wool thereon is one that is to be determined by the testimony of men qualified by experience and knowledge to pass upon that subject. Without such evidence, it will not be held to be self-evident that an estimate based on an examination of 8 out of 20,000 skins was inadequate.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 85.*]

On Application for Review of a Decision by the Board of United States General Appraisers.

D. Frank Lloyd, Asst. Atty. Gen. (Charles D. Lawrence, of counsel), for the United States.

Benjamin G. Hall and Searle & Pillsbury (Charles P. Searle, of counsel), for importers.

COLT, Circuit Judge. This petition for review relates to the dutiable weight of the wool on 20,000 sheepskins imported from Canada into the port of Boston in February, 1905. The question involved is whether the appraiser's estimated weight or the importers' estimated weight is the proper dutiable weight of this wool.

The Board of General Appraisers decided in favor of the importers, on the ground that their estimate appeared to be more correct than the appraiser's estimate, "based upon an examination of eight skins out of such a large number":

"The appraiser reports that he has examined, dried, and sheared eight skins, and based upon such examination he returned 37 per cent. of the gross weight of the whole importation as wool of the second class. The importers protest, and claim that, by actual test and weighing of the wool removed by them in the factory, that the true quantity of wool was only 61,279 pounds, which was 32 per cent. of the gross weight. This result is clearly proven, and considering that it was an actual test of all the skins, it would appear to be more correct than an estimate based upon an examination of eight skins out of such a large number; and we feel constrained by the evidence to adopt the latter result as the correct quantity of dutiable wool actually imported upon the skins. Duty was assessed at the lawful rate per pound, but upon an excessive weight."

If the appraiser in making his estimate proceeded according to law, his estimate is conclusive, and, consequently, the estimate made by

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the importers becomes immaterial, although it may be more correct.

The first question, therefore, to be determined, is whether, upon the evidence submitted, the importers have shown that the method pursued by the appraiser in making his estimate was contrary to law.

The regulations promulgated by the Secretary of the Treasury under Tariff Act July 24, 1897, c. 11, § 1, Schedule K, par. 360, 30 Stat. 183 (U. S. Comp. St. 1901, p. 1666), for estimating the quantity and value of wool of this class provides as follows:

"The shearing of a reasonable number of the skins should furnish data for a correct report of the dutiable weight of the wool." T. D. 22,702.

Under this regulation the appraiser must shear a reasonable number of skins in order to furnish data for the dutiable weight of this wool. Upon this point the government relies upon the appraiser's report and the testimony of Joseph A. Reed, the official wool examiner.

In his report the appraiser says:

"The seven cars of skins, subject of protest, were carefully examined by the wool examiner and his assistant, as they were unloaded at the Boston & Maine station and passed over the government scales, and the eight skins selected and sheared, in their judgment and experience, represented a correct average of the entire lot, and it was unnecessary and impracticable to shear more. The result of the shearing, as given below, shows an average yield, based on the dry weight of the skins, of 51.51 per cent., which is equivalent to 37 per cent. yield based on the wet out-turn weight of the skins. Therefore, in the opinion of this office, the percentage of yield of wool was correctly reported in accordance with T. D. 22,702.

| | | | | | |
|---|---|---|---|---|---|
| Skin No. 1.... | Wet weight | 7 | lbs. | 10 | oz. |
| | Dry " | 5 | " | 12 | " |
| | Yield of wool, | 3 | " | 7 | " or 59.77% based on dry wt. |
| Skin No. 2.... | Wet weight | 9 | lbs. | 11½ | oz. |
| | Dry " | 6 | " | 15 | " |
| | Yield of wool, | 3 | " | 6¼ | " or 48.87% based on dry wt. |
| Skin No. 3.... | Wet weight | 5 | lbs. | 9 | oz. |
| | Dry " | 4 | " | 2 | " |
| | Yield of wool, | 1 | " | 13 | " or 43.93% based on dry wt. |
| Skin No. 4.... | Wet weight | 8 | lbs. | 7½ | oz. |
| | Dry " | 6 | " | | |
| | Yield of wool, | 3 | " | 11½ | " or 60.50% based on dry wt. |
| Skin No. 5.... | Wet weight | 9 | lbs. | 11 | oz. |
| | Dry " | 6 | " | 12 | " |
| | Yield of wool, | 3 | " | 3¼ | " or 47.45% based on dry wt. |
| Skin No. 6.... | Wet weight | 6 | lbs. | 6 | oz. |
| | Dry " | 4 | " | 15¼ | " |
| | Yield of wool, | 2 | " | 3½ | " or 44.65% based on dry wt. |
| Skin No. 7.... | Wet weight | 8 | lbs. | 5½ | oz. |
| | Dry " | 6 | " | 1 | " |
| | Yield of wool, | 3 | " | 10½ | " or 60.31% based on dry wt. |
| Skin No. 8.... | Wet weight | 7 | lbs. | 4 | oz. |
| | Dry " | 4 | " | 10 | " |
| | Yield of wool, | 2 | " | 2½ | " or 46.62% based on dry wt." |

Reed, the official wool examiner, testified before the Board as follows:

"Int. 1. What is your business? Ans. Wool examiner at the port of Boston.

"Int. 2. How long have you been so engaged? Ans. Since the 2d of May, 1904.

"Int. 3. Did you examine the importation of pelts covered by the invoice in this case? Ans. I did, sir.

"Int. 4. How did you proceed to estimate the amount of wool on these pelts? Ans. I examined the skins first as they were unloaded from the cars. at the Boston & Maine yards and passed over the government scales, so that I saw a great deal more than required by the government to be seen in the examination.

"Int. 5. How did you arrive at the per cent. of wool upon which to make your return? Ans. I selected what I considered a number of average skins fairly representing the lot, and brought these to the appraisers' stores and sheared them.

"Int. 6.. The percentage which you arrived at was what? Ans. 37 per cent. on all, but the shearlings and the slats. There were 3,000 slats which were free, and there were 80 shearlings which were reported as 10 per cent. of wool.

"Int. 7. You have examined wool on skins of this character before, have you? Ans. Yes.

"Int. 8. And did you proceed in the usual manner in arriving at these estimates? Ans. The manner as prescribed by law; I did."

From this review of the evidence we have in support of the government's contention the rule prescribed by the Secretary of the Treasury requiring the "shearing of a reasonable number of skins," the report of the appraiser that the "eight skins selected and sheared, in their judgment and experience, represented a correct average of the entire lot," and that "it was unnecessary and impracticable to shear more," and the testimony of the wool examiner that he "selected" what he "considered a number of average skins fairly representing the lot," that he had examined wool on skins of this character before, and that he proceeded in the usual manner in making these estimates.

Upon this state of proofs it was incumbent upon the importers to show by direct and positive evidence that the shearing of eight skins, under the circumstances set out in the appraiser's report and the testimony of Mr. Reed, was not a reasonable number to furnish data for the dutiable weight of this wool.

The importers called three witnesses, whose testimony was wholly directed to showing the actual weight of the wool from all the skins after they were taken to the factory. This evidence, however, standing alone, is clearly insufficient. The importers should have supplemented this testimony by direct evidence that the shearing of eight skins, under the circumstances, was not a reasonable number to furnish data for the weight of this wool; and, in the absence of clear and convincing proof upon this point, the appraiser's estimate, in my opinion, must stand.

The importers contend that it is "self-evident" that the shearing of 8 skins out of 20,000 is not a "reasonable number." I cannot accept this proposition. To my mind what is a reasonable number is a question of fact, to be determined by evidence; in other words, it is a question to be determined by the testimony of men who are qualified by reason to their experience and knowledge to pass upon this subject.

The importers having failed to show by direct and proper evidence that the appraiser, in estimating the dutiable weight of this wool, did not proceed according to the method prescribed by the Secretary of the Treasury under paragraph 360 of the tariff act of 1897, it follows that the appraiser's report must be accepted as fixing the proper dutiable weight of this wool.

The decision of the Board of General Appraisers is reversed.